1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com

6  Attorneys for Plaintiff

7  [Additional counsel appear on signature page.]

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 RENE VAN MEERBEKE, Individually and on )   Case No.
   Behalf of All Others Similarly Situated,  )
11                                           )   CLASS ACTION
                      Plaintiff,             )
12                                            )   COMPLAINT FOR VIOLATIONS OF THE
         vs.                                  )   FEDERAL SECURITIES LAWS
13                                            )
   GOPRO, INC., NICHOLAS D. WOODMAN,          )
14 JACK R. LAZAR and ANTHONY J. BATES,        )
                                              )
15                    Defendants.             )
                                              )   DEMAND FOR JURY TRIAL
16 _____)

**INTRODUCTION**

1. Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by GoPro, Inc. ("GPRO" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**SUMMARY OF THE ACTION**

2. This is a securities class action on behalf of all persons who purchased or otherwise acquired the publicly traded securities of GPRO from July 21, 2015 through January 13, 2016, inclusive (the "Class Period"), against GPRO and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"), including Nicholas D. Woodman, the Company's Chairman and Chief Executive Officer ("CEO"), Jack R. Lazar, GPRO's Chief Financial Officer ("CFO"), and Anthony J. Bates, the Company's President.

**BACKGROUND AND SUMMARY**

3. GPRO is a consumer electronics company primarily selling mountable, wearable cameras and related accessories designed for active or challenging physical environments, including, for example, cameras mounted on musical instruments during concerts or worn by athletes during sporting events.

4. In June 2014, GPRO commenced an initial public offering ("IPO") of its common stock, issuing approximately 17.8 million shares at $24 per share. In the weeks and months following, those shares shot up to trade at over $98 per share. In November 2014, GPRO commenced a secondary offering of its common stock, issuing approximately 10.3 million additional shares at $75 per share.

5. During the Class Period, defendants issued false and misleading statements concerning the Company's current financial condition and future revenue and earnings prospects,

including the strength of demand for its traditional HERO model camera products and its new HERO Session model cameras.

6. These false and misleading statements caused the Company's securities to trade at artificially inflated prices during the Class Period, with its stock price reaching a high of $64.74 per share on August 10, 2015.

7. On October 28, 2015, the Company announced third quarter 2015 financial results that badly missed the Company's revenue and earnings guidance by up to $45 million and $0.07, respectively. The Company explained that the shortfall was a result of the following business issues:

- sales of its new HERO Session line were weak;
- its HERO Session line was priced too high;
- the Company was experiencing unfavorable sales trends which had begun in July 2015; and
- inventory had increased by more than $70 million in the quarter.

8. The October 28, 2015 earnings miss and guidance reduction caused the price of the Company's stock to decline from a close of $30.21 per share on October 28, 2015 to a close of $25.62 per share on October 29, 2015 on heavy trading volume. GPRO securities, however, continued to trade at artificially inflated prices during the rest of the Class Period.

9. Following the Company's October 28, 2015 disclosures, additional facts concerning the Company's true financial condition continued to emerge. For example, on December 4, 2015, the Company cut the price of its key product, HERO4 Session, to $199.00 from $299.00, the second price cut since the product's release in July 2015.

10. Then on January 13, 2016, GPRO issued a press release announcing its preliminary financial results for its 2015 fourth quarter, which missed analysts' consensus estimates by $84 million. In addition, GPRO announced that it would cut its workforce by 7% and take a $30 million charge to account for excess inventory, among other things:

**GoPro Announces Q4 and Calendar Year 2015 Preliminary Results**

\* \* \*

*Fourth quarter revenue reflects lower than anticipated sales of its capture devices due to slower than expected sell through . . . . Fourth quarter revenue includes a*
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS - 2 -

*$21 million reduction for price protection related charges resulting from the HERO4 Session repricing in December. . . . [A] charge of between $30 million and $35 million to cost of revenue for excess purchase order commitments, excess inventory, and obsolete tooling is anticipated to be between 44.5% and 45.5%.*

\* \* \*

*GoPro has implemented a reduction in its workforce of approximately 7 percent.*

11. These January 13, 2016 disclosures caused the price of GPRO stock to decline from a close of $14.61 per share on January 13, 2016 to a close of $12.48 per share on January 14, 2016.

## JURISDICTION AND VENUE

12. Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

13. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because GPRO is headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

14. Each defendant conducts business in or is a citizen of California and their wrongful acts arose in and emanated from this District.

## PARTIES

15. Plaintiff Rene van Meerbeke purchased GPRO securities during the Class Period, as set forth in the certification attached hereto, and was damaged as a result of defendants' wrongdoing as alleged in this complaint.

16. Defendant GPRO is a consumer electronics company headquartered San Mateo, California and incorporated in Delaware. GPRO's principal executive offices are located at 3000 Clearview Way, San Mateo, California. GPRO primarily sells mountable, wearable cameras and related accessories designed for active or challenging physical environments, including, for example, cameras mounted on musical instruments during concerts or worn by athletes during sporting events. GPRO trades on the NASDAQ stock exchange under the ticker symbol "GPRO."

17. Defendant Nicholas D. Woodman ("Woodman") is the Company's founder and is, and was at all times during the Class Period, CEO and Chairman of GPRO.

18. Defendant Jack R. Lazar ("Lazar") is, and was at all times during the Class Period, CFO of GPRO.

19. Defendant Anthony J. Bates ("Bates") is, and was at all times during the Class Period, President and a director of GPRO.

20. The defendants named in ¶¶17-19 are sometimes referred to herein as the "Individual Defendants."

**FALSE AND MISLEADING STATEMENTS
ISSUED DURING THE CLASS PERIOD**

21. On July 21, 2015, GPRO announced its second quarter 2015 financial results in a press release. The reported financial results beat forecasted revenue and earnings guidance by a wide margin. The press release stated, in part, as follows:

**GoPro Announces Second Quarter 2015 Results**

**Revenue of $420 Million, Up 72% Year-Over-Year
Non-GAAP EPS of $0.35, Up from $0.08 a Year Earlier
GoPro Now Sold in More than 40,000 Stores Worldwide**

\* \* \*

"I couldn't be more proud of our aggressive pace of innovation. With the introduction of HERO4 Session and HERO+ LCD, we've launched five new cameras in the past 10 months, exciting both new and existing customers and contributing to strong second quarter results," said GoPro Founder and CEO, Nicholas Woodman. "*Our core business is enjoying terrific momentum as we charge forward into attractive adjacent markets*."

\* \* \*

**Second Quarter 2015 and Recent GoPro Highlights Include:**

- Launched HERO4 Session featuring simple one-button control and an exciting new form factor 50% smaller and 40% lighter than other HERO4 cameras.

\* \* \*

- Increased shipments of Point-of-Purchase (POP) displays by over 40%; linear feet of new POP displays increased over 75% for the first six months of 2015, year-over-year.

22. After the Company announced its second quarter 2015 financial results on July 21, 2015, the Company held a conference call for analysts and investors. During the call, which was

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS - 4 -

hosted by defendants Woodman and Lazar, defendant Lazar reiterated the second quarter 2015 results and increased GPRO's third quarter 2015 financial forecasts to above analyst consensus estimates:

> Inventory increased by $55.2 million sequentially, and turns were 4.7. The substantial portion of increased inventory relates to new products we are bringing to market and our efforts to prepare for the holiday season. . . .
>
> . . . After a great first half of the year, we're also quite optimistic about the remainder of 2015. Channel inventory levels both in the US and abroad look healthy. . . .
>
> Accordingly, we anticipate revenue of between $430 million and $445 million for the third quarter, and at the midpoint of this guidance it represents a 56% year-over-year increase. . . .
>
> . . . [W]e anticipate EPS to be in the range of $0.29 to $0.32.

23. On July 21, 2015, Piper Jaffray issued a report entitled "GoPro, Inc., Raising Estimates & PT to $72 Following Strong Q2 & Robust Outlook; Reiterate OW." The report stated:

> We are reiterating our Overweight rating and raising our price target from $68 to $72 following GoPro's strong Q2 earnings report in which sales were up 72% and EPS was up 315% Y/Y. More importantly, *the ongoing robust growth of the brand was underscored by management's Q3 guidance in which sales are forecasted at $435M- $445M, significantly above our former $386M estimate and the Street's $401M. Q3 EPS is now forecasted at $0.29-$0.32 (Street: $0.22)*.

24. On July 22, 2015, J.P. Morgan issued a report entitled "2Q15 Results: Positive Momentum Continues." The report stated as follows:

> *GoPro delivered another solid beat-and-raise*, demonstrating resilient growth in a typically quiet quarter. Pull-through momentum for Hero 4 Black and Silver coupled with the off-cycle HERO+LCD drove camera units up 93% y/y with elevated margins owing to an increase in ASPs. *3Q15 guidance beat, driven by management's confidence in the 50% smaller Hero Session and new initiatives* . . . .

25. Each of defendants' statements set forth above was materially false and misleading because defendants knew, or disregarded, and failed to disclose the following facts:

(a) The Company was already experiencing declining sales trends in its key products;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS - 5 -

(b) Average sales prices ("ASPs") were being pressured by competition, distributors or both, and pricing of the Company's new products was too high to be competitive or meet sales expectations;

(c) The price of GPRO's HERO Session line of products was far too high, thus competing with other HERO products;

(d) Inventories were already growing at a rate that indicated that demand and sell-through were slowing and could not keep pace with forecasted sales; and

(e) In light of these known facts, the Company's revenue and earnings forecasts did not have a reasonable basis.

26. After the Company's second quarter 2015 financial results and increased earnings per share ("EPS") forecast, GPRO stock continued to trade at artificially inflated prices of above $61 per share.

27. On October 28, 2015, GPRO issued a press release announcing financial results for the third quarter of 2015, ending September 30, 2015, that missed the Company's and analysts' consensus revenue and earnings forecasts by up to $45 million and $0.07 per share. The press release stated, in part, as follows:

> **GoPro Announces Third Quarter 2015 Results**
>
> **Revenue of $400 million, Up 43% Year-Over-Year**
> **Non-GAAP EPS of $0.25, Up from $0.12 a Year Earlier**
>
> \* \* \*
>
> "I am proud of our year-to-date accomplishments in which we posted strong financial results and expanded our portfolio of products, however our business in the third quarter was clearly more difficult than anticipated," said GoPro Founder and CEO, Nicholas Woodman.
>
> \* \* \*
>
> **Third Quarter 2015 and Recent GoPro Highlights Include:**
>
> \* \* \*
>
> - Re-launched HERO4 Session – priced between HERO4 Silver and HERO+. Session is now well positioned for the holidays.

28.     After the Company announced its third quarter 2015 financial results on October 28, 2015, the Company held a conference call for analysts and investors to discuss the results. During the call, which was hosted by defendants Woodman and Lazar, defendants explained the disappointing sales and earnings results. In addition, defendants continued to assure investors that notwithstanding the revenue and earnings miss, the Company's inventories, while growing, were in line with expected demand and ASPs continued to remain stable. Nevertheless, defendants admitted that the Company had begun to see an unfavorable decline in its sales trends as early as July 2015:

> [Woodman"]  I want to explain three factors we believe led to our underperformance for the third quarter. Factor One, *initial sellthrough of HERO4 Session was weak*. In retrospect, we believe *we priced the product too high at $399*, which caused consumer confusion because they were asked to decide between the HERO4 Session and one of our best-selling products, HERO4 Silver, also priced at $399.
>
> \*   \*   \*
>
> Factor Two, after receiving strong feedback from consumers and retailers, combined with our recognition that Session's underperformance was likely to continue, *we took action to price adjust Session to $299 in September*. This resulted in $19 million of price protection and MDF which is reflected in our reduced revenue for the quarter.
>
> Since the price adjustment, we've seen an increase in sellthrough as a percentage of product mix. *Session is now selling in line with what we would typically expect for a product at this price point*. Translation, while it got off to a slow start, *Session is now performing as a full-fledged member of the HERO4 lineup*.
>
> . . . *[W]e now believe we underfunded marketing in the second and third quarters of this year which impacted demand*. . . .  Conclusion, we made some mistakes and we have taken corrective action.
>
> \*   \*   \*
>
> [Lazar:]  Third-quarter revenue of $400.3 million was up 43% year-over-year, but below our guidance range of $430 million to $445 million, due primarily to weaker-than-anticipated demand for HERO4 Session, a $19 million offset to revenue for price protection and NDF related to the Session price change *and overall sellthrough trends, particularly domestically that were seasonally weaker than the prior year*.
>
> \*   \*   \*
>
> *Inventory increased by $70 million sequentially and turns were 3.4 times*. We were building inventory for the upcoming holiday season, so lighter-than-anticipated demand resulted in inventory terms that were below our target levels. Over $80 million of this inventory relates to new products introduced this year.

1           *       *       *

2   As we've noted throughout this call, Session sellthroughs has been weaker than anticipated *and our overall sellthrough in the third quarter underperformed. Additionally, we are heading into a fourth quarter with channel inventory levels that are at our targets, with the exception of Session and, to a lesser extent, the HERO+ LTD, which are higher*.

5           *       *       *

6   *As far as the sellthrough reduction, I think what we saw were some unfavorable trends from late July, early August through the August[-]September time frame*.

8           *       *       *

9   I want to be clear, though, Paul, on the channel. *It is not that the channel is got too much inventory in it. It is that the channel had very little inventory in it last year*.

11          *       *       *

12  We didn't comment on the ASPs, and we just didn't give any guidance on it. But if they were coming down materially, I think it would have probably affected gross margins, right?

14  29. On October 29, 2015, after the release of the Company's third quarter 2015 financial results and conference call, Wedbush published a report discussing the Company's wide revenue and earnings miss and guidance cut and criticizing the Company for not pre-announcing the huge miss:

- **GoPro had a much worse-than-expected Q3 driven by HERO4 Session**. *Revenue was $400 million, versus our estimate of $455 million, consensus of $434 million, and guidance of $430 – 445 million*. Non-GAAP EPS was $0.25, versus our estimate of $0.35, consensus of $0.29, and guidance of $0.29 – 0.32. *Management attributed the miss to initial weak sell-through for the HERO4 Session* due to a price point that was too high. The second factor was the $100 price cut for Session, which resulted in $19 million of price protection and marketing development funds. The third factor was underfunded marketing, which hurt demand. *In our view, management made a mistake in not pre-announcing the negative results*.

- **Q4 guidance also disappointed, partly a reflection of high channel inventory for Session and HERO+ LCD**. Q4:15 guidance is for revenue of $500 – 550 million and non-GAAP EPS of $0.35 – 0.45, vs. our prior estimates of $700 million and $1.06, and prior consensus of $690 million and $0.82. . . .

- **Lowering our expectations for 2015 and 2016**. We are decreasing our FY:15 estimates for revenue to $1,733 million from $1,938 million, and for EPS to $1.28 from $2.00 to reflect worse-than-expected Q3 results and Q4 guidance. . . .

- **Management has made a number of missteps in recent months, most notably by not disclosing earlier in the year the lack of a full product refresh by year-end, as well as a poorly executed launch for the HERO4 Session.** *With that said, we believe that the recent bad news has now been fully priced into the stock* . . . .

30. The October 28, 2015 earnings miss and guidance reduction caused the price of the Company's stock to decline from a close of $30.21 per share on October 28, 2015 to a close of $25.62 per share on October 29, 2015 on heavy trading volume. GPRO securities, however, continued to trade at artificially inflated prices during the rest of the Class Period.

31. Each of defendants' statements set forth above was materially false and misleading because defendants knew, or disregarded, and failed to disclose the following facts:

 (a) Demand for the Company's key products was continuing to decline;

 (b) ASPs were being pressured by competition, distributors or both, and pricing of the Company's new HERO Session line of products was still too high to induce sales or meet sales expectations;

 (c) Inventories were growing at a rate indicating that demand and sell-through were stalling and could not keep pace with forecasted sales; and

 (d) In light of these known facts, the Company's fourth quarter 2015 revenue and earnings forecasts did not have a reasonable basis.

32. On December 4, 2015, the Company cut the price of its key product, HERO4 Session to $199.00 from $299.00. This was the second price cut since the product's release in July 2015.

33. On December 5, 2015, defendant Woodman appeared on the QVC network, a recognized source of discount products to drive sales of the HERO4 Session.

34. On December 10, 2015, Colin Born, GPRO VP of Corporate Development, spoke at the Wedbush Securities California Dreamin' Technology Management Access Conference to discuss the new price cut and stated that the price cut was not due to competition, but instead they were just "giving people the opportunity to have a GoPro – an advanced GoPro at that price point," and he assured investors that even with the reduction, "*we're still making money*."

35. On January 13, 2016, GPRO issued a press release announcing its preliminary financial results for its 2015 fourth quarter, including $435 million in revenue, which was $84

million below consensus estimates. In addition, GPRO announced that it would cut its workforce by 7% and take a $30 million charge to account for excess inventory, among other things:

> **GoPro Announces Q4 and Calendar Year 2015 Preliminary Results**
>
> **16% Annual Revenue Growth to $1.6 Billion for 2015**
>
> \* \* \*
>
> GoPro expects revenue to be approximately $435 million for the fourth quarter of 2015 and $1.6 billion for the calendar year. ***Fourth quarter revenue reflects lower than anticipated sales of its capture devices due to slower than expected sell through at retailers***, particularly in the first half of the quarter. ***Fourth quarter revenue includes a $21 million reduction for price protection related charges resulting from the HERO4 Session repricing in December***. Non-GAAP gross margin for the fourth quarter of 2015, excluding the impact of price protection and ***a charge of between $30 million and $35 million to cost of revenue for excess purchase order commitments, excess inventory, and obsolete tooling is anticipated to be between 44.5% and 45.5%***.
>
> \* \* \*
>
> ***To better align resources to key growth initiatives, GoPro has implemented a reduction in its workforce of approximately 7 percent***.

36. On the same day, January 13, 2016, after the Company issued its preliminary financial results, *Barrons* issued a report entitled "GoPro Halted: Q4 Rev $435M Misses by a Mile; To Cut 7% of Workforce." The report stated:

> ***Shares of adventure camera maker GoPro (GPRO) were halted in late trading on Nasdaq just before the company warned its Q4 revenue will come in sharply below analysts' expectations on lower sales of its cameras at retail***.
>
> GoPro sees revenue in the three months ending in December at "approximately $435 million," ***well below consensus of $521 million***.
>
> \* \* \*
>
> ***GoPro said it would cut about 7% of its workforce after expanding rapidly in recent years***.

37. Also on January 13, 2016, *Investor's Business Daily* published an article entitled "GoPro stock crashes on holiday sales, profit warning." The article noted, among other things, that after the Company's profit warning and stock price plunge, analysts characterized the stock as "'***total junk***.'"

38. On January 14, 2016, Barclays issued a report that described the Company's shocking January 13, 2016 disclosure in detail, noting that HERO4 Session price reductions appeared to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                                            - 10 -

accelerate since the October 28, 2015 fourth quarter 2015 guidance reduction, and that the impact on the Company's future financial condition was much greater than previously expected:

> Moving to EW; 2016 Moves from Transition to "Show Me"
>
> ***Execution woes continue and a quick recovery seems unlikely***: After the weak 3Q results and 4Q guide, we stuck with our long-term OW view given the opportunities we saw in 2016 . . . . ***Price reductions for the Hero Session, which may have picked up after the cut in 4Q15, could mean lower blended ASPs and margins longer term.***
>
> \* \* \*
>
> ***Management had discussed the impact a fuller retail channel heading into the holiday season would have on 4Q15 results on its last earnings call, but the impact appears to be much greater than previously anticipated***.

39. These January 13, 2016 disclosures caused the price of GPRO stock to decline from a close of $14.61 per share on January 13, 2016 to a close of $12.48 per share on January 14, 2016.

## LOSS CAUSATION/ECONOMIC LOSS

40. During the Class Period, as detailed herein, defendants made false and misleading statements about the strength of the Company's business and prospects and engaged in a scheme to deceive the market. This artificially inflated the prices of GPRO securities and operated as a fraud or deceit on Class Period purchasers of GPRO securities. Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the prices of GPRO securities price fell precipitously, as the prior artificial inflation came out of the prices over time. As a result of their purchases of GPRO publicly traded securities during the Class Period, plaintiff and other members of the Class (as defined below) suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

41. GPRO's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

42. The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of GPRO who knew that the FLS was false.

1  None of the historic or present tense statements made by defendants were assumptions underlying or
2  relating to any plan, projection or statement of future economic performance, as they were not stated.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action on behalf of all those who purchased GPRO publicly traded securities during the Class Period. Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

44. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. GPRO has more than 137.4 million shares of stock outstanding, owned by hundreds if not thousands of persons.

45. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a) Whether the 1934 Act was violated by defendants;

(b) Whether defendants omitted and/or misrepresented material facts;

(c) Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the prices of GPRO publicly traded securities were artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

46. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

47. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

49. Plaintiff incorporates ¶¶1-48 by reference.

50. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of GPRO securities during the Class Period.

52. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for GPRO securities. Plaintiff and the Class would not have purchased GPRO securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

# COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

53. Plaintiff incorporates ¶¶1-52 by reference.

54. The Individual Defendants acted as controlling persons of GPRO within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of GPRO stock, the Individual Defendants had the power and authority to cause GPRO to engage in the wrongful conduct complained of herein. GPRO controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff's reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff demands trial by jury.

DATED: February 4, 2016

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS

*s/ Shawn A. Williams*
SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)

JOHNSON & WEAVER, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 770/200-3104
770/200-3101 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt GoPro 10(b).docx

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I Rene van Meerbeke, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 09/11/15 | 42 | 31.9975 |
| 09/18/15 | 23 | 34.7675 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and

travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.  I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day January 2016.

DocuSigned by:

*Rene van Meerbeke*

Rene van Meerbeke